**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AMANDA WARREN**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | **Civ. No. DLB-25-3937** |
| **ST. MARY'S COUNTY**, *et al.*, | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

Amanda and Logan Warren ("Mrs. Warren" and "Mr. Warren," or collectively "the Warrens"), who are proceeding without counsel, filed this lawsuit alleging violations of their constitutional rights and Maryland state law in connection with a warrantless search of their home and subsequent criminal prosecution. They sue St. Mary's County ("the County"); the Town of La Plata, Maryland ("the Town"); St. Mary's County Sheriff Steve Hall; Deputy Devin Absher; Sergeant James Bare; La Plata Police Chief Carl Schinner; Captain Michael Payne; Captain Robert Bagley; Solange Baig; and Siobhan Kayser. The County, the Town, Hall, Absher, Bare, Bagley (collectively, "governmental defendants"), and Kayser have moved to dismiss for failure to state a claim. ECF 27 & 29.[1] For the following reasons, the motions are granted in part and denied in part.

I.    **Background**

The following is from the Warrens' complaint and matters of which the Court may take judicial notice.

The Warrens are married and have three children. ECF 1, ¶ 1. At the time of the events underlying this lawsuit, Mr. Warren was a police officer with the Town. *Id.* ¶ 7. In September 2023,

---

[1] Baig and Schinner have not been served, *see* ECF 32 & 33, and no one has entered an appearance on their behalf.

the Warrens signed a lease and moved into a townhome located at 22711 Ventura Way in California, Maryland ("the residence"). *Id.* ¶ 21. Baig was their landlord. *Id.* ¶ 22.

Kayser lived close by, at 22707 Ventura Way. *Id.* ¶ 31. Kayser and Mrs. Warren were close friends. *Id.* One of the reasons the Warrens moved to the residence was "to support Kayser during her personal and family hardships." *Id.* ¶ 32.

When the Warrens moved in, they discovered that "Baig had left behind numerous items including flooring boxes, paint buckets, an old non-working refrigerator, and miscellaneous property." *Id.* ¶ 23. Baig told the Warrens that the refrigerator could be discarded. *Id.* ¶ 24. Some of the other items "were gifted or sold to [the Warrens]; others were abandoned without instruction." *Id.* ¶ 23. The Warrens also discovered that there were no ceiling fans in any room; nor were there "ceiling electrical boxes capable of supporting fans." *Id.* ¶ 25. The Warrens "repeatedly asked Baig about installation, and she acknowledged that no fans existed." *Id.*

Throughout the tenancy, the Warrens kept the residence in good condition and paid their rent on time. *Id.* ¶ 26.

At some point, Mrs. Warren "reported sexual harassment by a [Town] [p]olice [o]fficer." *Id.* ¶ 105. "Immediately thereafter, [d]efendants within the" Town police department "including Schinner, Payne, and Bagley" began to "treat[] [the Warrens] with hostility, suspicion, and disdain." *Id.* ¶ 106.

In the summer of 2024, Kayser and Mrs. Warren had a falling-out. *Id.* ¶ 33. Kayser then "began harassing" the Warrens. *Id.* ¶ 34. On July 18, 2024, Kayser sought a peace order against Mrs. Warren, "falsely alleging fear of [Mrs. Warren's] behavior"; Kayser's request "was denied for lack of evidence." *Id.* ¶ 35. Shortly thereafter, on July 30, 2024, Kayser attempted to file an eviction action against the Warrens, even though she was not their landlord and had no legal

authority to do so. *Id.* ¶ 36. The Warrens "were not served with eviction papers, no lawful notice was posted, and no eviction hearing . . . occurred." *Id.* ¶ 37.

Sometime prior to August 13, 2024, Kayser and her brother contacted Mr. Warren's command staff at the Town police department and made anonymous reports falsely accusing the Warrens of stealing hardwood flooring. *Id.* ¶ 63. Though the Warrens' complaint is somewhat unclear on this point, it appears that Baig also contacted law enforcement prior to August 13 and told them that the Warrens had stolen certain items from the residence—"items [the Warrens] had either purchased, were gifted, or were abandoned by Baig." *Id.* ¶ 39. Baig and Kayser then communicated with Schinner and Payne at the Town police department in an effort to "pressur[e] [the] St. Mary's County Sheriff's Office to pursue charges" against the Warrens. *Id.* ¶ 65.

Baig approached "St. Mary's County officials" in an effort to persuade them to bring charges against the Warrens. *Id.* ¶ 66. Those officials initially told her "that her dispute was civil and must proceed through landlord-tenant court." *Id.* Dissatisfied with that answer, Baig sought assistance from Town police personnel, who "directed [her] on how to frame her complaint to create criminal exposure." *Id.* ¶ 67. "Command staff" at the Town police department "told Baig they would 'pull strings' and contact higher levels." *Id.* ¶ 68. Schinner then contacted Hall, the County sheriff, "directly to request that officers be sent to assist Baig" in entering the Warrens' home and "take a report." *Id.* ¶ 69. Hall obliged. *Id.* ¶ 70.

On August 13, 2024, Baig and Kayser accompanied officers including two County sheriff's office personnel—Absher and Bare—to the residence. *Id.* ¶¶ 44–45. Mrs. Warren was at work at the time. *Id.* ¶¶ 38–40. Upon arrival at the residence, the officers "forcibly entered . . . by drilling out the front door locks." *Id.* ¶ 44. They did not have a warrant, and the Warrens did not consent to a search of the residence. *Id.* ¶¶ 48–49. The officers, Baig, and Kayser then entered the residence.

*Id.* ¶ 45. The Warrens' "belongings were searched, photographed, and disturbed, without any judicial authorization." *Id.* ¶ 47. "Several neighbors or civilians" also "were invited or allowed into [the Warrens'] home" during this search and "unlawfully view[ed] and photograph[ed] [their] private belongings." *Id.* ¶ 46.

Meanwhile, several officers from the County sheriff's office "went to [Mrs. Warren's] workplace to question her." *Id.* ¶ 38. They "told her she was suspected of stealing items from the [r]esidence—items [the Warrens] had either purchased, were gifted, or were abandoned by Baig." *Id.* ¶ 39. During this questioning, Mrs. Warren learned of the warrantless entry to her residence. *Id.* ¶ 40. She "immediately asked how officers had entered the [r]esidence," and they told her "they had entered with Baig and 'did not need a warrant.'" *Id.* ¶ 42. Mrs. Warren requested a burglary report, but the officers did not give her one; they claimed that "the matter was 'civil[.]'" *Id.* ¶ 43.

Mrs. Warren then returned to the residence. *Id.* ¶ 54. When she arrived, she found officers from the County sheriff's office along with Payne and Bagley from the Town police department. *Id.* ¶¶ 54–55. Payne and Bagley were there even though the residence was "outside their jurisdiction" as Town police officers. *Id.* ¶ 54. Payne, Bagley, and County sheriff's office personnel "jointly searched and photographed the [r]esidence." *Id.* ¶ 55. The Warrens assert that the Town police participated in the search "due to prior complaints [Mrs. Warren] made about officer misconduct." *Id.* ¶ 56.

Mrs. Warren "questioned officers about the unlawful search." *Id.* ¶ 57. Bare then "threatened to arrest her if she did not leave her own residence." *Id.* Mrs. Warren "asked if officers had seen the four toilets she was allegedly accused of stealing," and the officers "acknowledged all toilets were present." *Id.* ¶ 58. "Officers also admitted they saw no ceiling fans—contrary to Baig's false claims." *Id.* ¶ 59. Someone—it is not clear who—also "made [the officers] aware that

the fridge was discarded and [the Warrens] had the flooring boxes in [their] possession." *Id.* ¶ 60. The officers' "body-worn camera footage show[ed] that items were still in the home." *Id.* ¶ 71. Nevertheless, "officers proceeded with threats and accusations." *Id.* ¶ 61. One supervising officer said that the officers were "just doing what [they were] told[.]" *Id.* ¶ 62.

The Warrens were subsequently charged with "theft and similar offenses," each "for the same events and items." *Id.* ¶¶ 71–72. The charging documents mentioned "[i]tems that had never been discussed during the search[.]" *Id.* ¶ 73. "The State's Attorney escalated charges, adding items [the Warrens] never possessed." *Id.* ¶ 74.

Eventually, the case proceeded to trial. *Id.* ¶ 75. On the stand, "Baig, Kayser, and responding officers admitted under oath that the search [of the residence] occurred without a warrant." *Id.* ¶ 75. They also "admitted that items alleged[ly] stolen were visible on body-worn camera." *Id.* ¶ 76. The jury hung. *Id.* ¶ 77.

The state "refiled the charges." *Id.* ¶ 78. To defend against the criminal case, the Warrens "were forced to retain private counsel" and "incurr[ed] more than $20,000 in legal fees." *Id.* ¶ 79. Throughout, Mr. Warren was suspended from his police officer position without pay. *Id.* ¶ 80. Eventually, the Warrens pleaded guilty, "solely to end the ongoing retaliation, financial burden, and emotional exhaustion." *Id.* ¶ 81.

The Court takes judicial notice that on November 7, 2025, Mr. Warren pleaded guilty in the Circuit Court for St. Mary's County, Maryland to malicious destruction of property in violation of Md. Code Ann., Crim. Law § 6-301, and that he was sentenced to 60 days of incarceration, execution fully suspended, followed by two years of probation.[2] The Court also takes judicial

---

[2] *See State v. Logan Warren*, No. C-18-CR-25-000274 (Cir. Ct. St. Mary's Cnty.), https://casesearch.courts.state.md.us/casesearch/case-detail-page?caseId=C18CR25000274 (docket printout attached to Kayser motion to dismiss at ECF 27-2).

notice that on October 31, 2025, Mrs. Warren pleaded guilty in the Circuit Court for St. Mary's County, Maryland to theft in violation of Crim. Law § 7-104, and that she was sentenced to six months of incarceration, execution fully suspended, followed by three years of probation.[3]

On December 2, 2025, the Warrens filed this lawsuit. ECF 1. They bring seven counts: a Fourth Amendment claim for unlawful entry, search, and seizure against Absher, Bare, Hall, Payne, Bagley, and Schinner (Count I); a 42 U.S.C. § 1983 conspiracy claim against all defendants (Count II); a Fourteenth Amendment claim for retaliation and abuse of process against all defendants save the Town and County (Count III); a *Monell* claim for failure to train, supervise, or discipline against the County (Count IV); a *Monell* claim for "supervisory custom and retaliatory practices" against the Town (Count V); a state-law claim for trespass and invasion of privacy against all defendants (Count VI); and a state-law claim for defamation against Baig and Kayser (Count VII). They seek nominal, compensatory, and punitive damages, a declaratory judgment that their Fourth and Fourteenth Amendment rights were violated, and an injunction "requiring municipalities to implement proper training, supervision, and constitutional safeguards." *Id.* ¶¶ A–G (prayer for relief).

On January 22, 2026, Kayser filed a motion to dismiss Counts II, III, VI, and VII for failure to state a claim. ECF 27. On January 26, 2026, the governmental defendants filed a motion to dismiss Counts I, II, III, IV, V, and VI for failure to state a claim. ECF 29. The motions are fully briefed. ECF 27-1, 29-1, 31, 34, 36, & 38. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

---

[3] *See State v. Amanda Warren*, No. C-18-CR-25-000279 (Cir. Ct. St. Mary's Cnty.), https://casesearch.courts.state.md.us/casesearch/case-detail-page?caseId=C18CR25000279 (docket printout attached to Kayser motion to dismiss at ECF 27-3).

## II.    Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability

of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); Fed. R. Evid. 201(b).

The Warrens do not have counsel. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 214).

## III.    Discussion

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived them of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S.

137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 45 n.3, 48 (1988) (quoting 42 U.S.C. § 1983).

### A.        Fourth Amendment Claim (Count I)

In Count I, the Warrens allege that Absher, Bare, Hall, Payne, Bagley, and Schinner violated the Warrens' Fourth Amendment right to be free from unreasonable searches and seizures when they entered and searched the residence and seized the Warrens' belongings "without a warrant, without consent, and without exigent circumstances."[4] ECF 1, ¶ 91. The governmental defendants argue that the Warrens fail to state a claim. The governmental defendants also argue that they are entitled to qualified immunity.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures.'" *King*, 825 F.3d at 214 (quoting U.S. Const. amend. IV). Under the Fourth Amendment, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Those exceptions include exigent circumstances, such as the need to render emergency assistance or to prevent the destruction of evidence, *see Kentucky v. King*, 563 U.S. 452, 460 (2011), and valid consent, *see Quinn v. Zerkle*, 111 F.4th 281, 291 (4th Cir. 2024).

---

[4] The analysis in parts III.A–G addresses the merits of the Warrens' claims insofar as they seek declaratory and monetary relief. The Court addresses the Warrens' standing to seek injunctive relief in part III.H.

The Warrens have plausibly alleged that their Fourth Amendment rights were violated. It appears from the Warrens' allegations that members of the County sheriff's office and Town police department drilled the locks and entered their residence without a warrant and without their consent. It does not appear that the officers were motivated by any exigency, such as concern for the destruction of evidence; according to the Warrens, the officers' stated purpose for entering the residence was merely to "take a report." ECF 1, ¶ 69. Such a search could violate the Fourth Amendment. Moreover, to the extent the officers may have relied on Baig's authorization to enter the residence—which is what the Warrens' allegations suggest—"a landlord may not give the police consent to a warrantless search of a rented apartment or room." *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005); *see also United States v. Perez*, 167 F.4th 709, 718 (4th Cir. 2026) (same).[5] At this early stage, the Warrens have sufficiently alleged a Fourth Amendment violation.

The governmental defendants claim that the Warrens fail to state a Fourth Amendment claim because they were prosecuted, went to trial, and ultimately pleaded guilty. ECF 29-1, at 5. They argue that "there is no allegation that [the] evidence [recovered from the search] was suppressed" and that the Warrens' successful prosecution "would seem to establish the lawfulness of the search, absent additional facts to suggest a plausible claim for relief." *Id.* The governmental defendants cite no authority for this argument. They do not explain how the facts that the Warrens were prosecuted, the jury hung, and the Warrens then took a plea prove that the search of the

---

[5] This is not to suggest that Baig's consent to the officers' entry *necessarily* would have been insufficient for Fourth Amendment purposes. For example, if the officers reasonably believed, based on the information available to them at the time, that Baig had the authority to let them into the residence, that could render the search valid. *See United States v. Howe*, 414 F. App'x 579, 581 (4th Cir. 2011) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). But that is a question for discovery. For now, the Warrens have stated a plausible claim.

residence comported with the Fourth Amendment. The fact that a person has been found guilty of a crime does not automatically imply that their Fourth Amendment right to be free from unreasonable searches was not violated. *See Haring v. Prosise*, 462 U.S. 306, 319 (1983) (explaining that "the expectation or hope of a lesser sentence . . . are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether [a Fourth Amendment challenge to the introduction of inculpatory evidence] might be factually supported," and thus a defendant's "decision not to exercise his right to stand trial cannot be regarded as a concession of any kind that a Fourth Amendment evidentiary challenge would fail") (quoting *Tollett v. Henderson*, 411 U.S. 258, 268 (1973)). The Warrens do not allege that any judge found the search lawful.[6] Absent any supporting caselaw, the Court cannot conclude at this juncture that the Warrens' prosecution and guilty plea defeats their Fourth Amendment claim.[7]

---

[6] It appears from the docket entries of their respective criminal cases that the Warrens filed "motions to suppress/exclude evidence, dismiss and severance," *see* ECF 27-2, at 4; ECF 27-3, at 4, but the contents of and bases for those motions are unclear. It also is unclear from the docket how (indeed, whether) the Circuit Court ruled on those motions.

[7] The Warrens pleaded guilty, and there is no indication that their convictions have been invalidated. However, the defendants do not seek dismissal of any claims based on *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which held that a § 1983 plaintiff cannot "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless they show that the conviction or sentence already has been invalidated. Indeed, the governmental defendants expressly disclaim any reliance on *Heck. See* ECF 34, at 2 n.2 (stating that *Heck* "is not the gravamen of [the governmental defendants'] grounds for dismissal").

Even so, the Court must independently review a complaint filed in forma pauperis and dismiss any claim that is frivolous, malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii), 1915A(b). Thus, the Court considers whether the *Heck* bar applies to Counts I, II, and VI—the only claims that survive the 12(b)(6) analysis in this opinion.

The Court cannot conclude, at this juncture, that *Heck* bars Counts I or II. True, in both counts, the Warrens challenge a search of their residence that preceded the filing of criminal charges. However, as the Fourth Circuit has explained, whether *Heck* bars such a challenge depends on whether "suppression [of the evidence recovered from the search] would *necessarily* invalidate the criminal conviction[.]" *Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir. 2003). Here,

11

The governmental defendants also claim that they are entitled to qualified immunity. "The defense of qualified immunity shields public officials from civil liability unless they violated a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024) (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)). In adjudicating a qualified immunity defense, the Court must consider "first, whether the facts viewed in [the Warrens'] favor make out a violation of [their] . . . constitutional rights, and second, whether that violated right was clearly established at the time." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022); *see also Lewis*, 98 F.4th at 530 (explaining that court "may address these prongs in either order, and if the officer succeeds at either prong, he is entitled to qualified immunity"). The Warrens bear the burden of proof on the first prong, and the governmental defendants bear the burden of proof on the second prong. *Stanton*, 25 F.4th at 233.

The governmental defendants' argument for qualified immunity is cursory and undeveloped. The governmental defendants essentially rehash their argument for why the Warrens fail to state a Fourth Amendment claim: Because the Warrens pleaded guilty, they argue, the officers "did not violate [their] rights to be free from search and seizure and, therefore, could not reasonably believe they were violating [their] constitutional rights and certainly not any rights that were clearly established." ECF 29-1, at 6. As the Court has just explained, the governmental defendants have offered no reason why the Warrens' prosecution and guilty pleas should

---

it is not clear what (if any) evidence was recovered from the search of the Warrens' residence or whether any such evidence, if suppressed, would invalidate their convictions. On this limited record, the Court cannot conclude that the *Heck* bar applies to Counts I or II.

Count VI is a state law claim. The Fourth Circuit has not "addressed whether *Heck*'s favorable termination rule may apply to state law claims." *Blanton v. Duncan*, No. 1:25-cv-234-MR-WCM, 2026 WL 672966, at *5 n.3 (W.D.N.C. Feb. 12, 2026), *R&R adopted*, 2026 WL 663244 (W.D.N.C. Mar. 9, 2026). Because the law is not clear on this issue, and because the governmental defendants have disavowed any reliance on *Heck*, the Court will not dismiss Count VI as barred by *Heck*.

automatically foreclose their Fourth Amendment claim. Moreover, the Warrens have plausibly alleged a violation of their constitutional rights. The governmental defendants, for their part, offer no substantive argument—apart from relying on the fact of the Warrens' prosecution—explaining why the violated right was not clearly established. The governmental defendants may renew their request for qualified immunity later in the litigation if they wish. But right now, the record is far too undeveloped for the Court to rule on a qualified immunity defense. The Court will not dismiss Count I on the basis of qualified immunity. *See, e.g.*, *Swagler v. Neighoff*, 398 F. App'x 872, 880–81 (4th Cir. 2010) (district court did not abuse its discretion by denying pre-discovery request for dismissal on qualified immunity grounds where plaintiff plausibly alleged violations of clearly established First and Fourth Amendment rights).

Count I may proceed.[8]

---

[8] For the first time in their reply, the governmental defendants argue that during their plea allocutions, the Warrens each waived their right to "challenge the manner [in]which the State has gathered the evidence" as well as their "right to complain about how [they were] being prosecuted." ECF 34, at 2–3. The governmental defendants have submitted audio recordings of the allocutions in connection with their reply. ECF 35 (mot. for leave to file physical exhibit) & 37 (Paperless Order granting ECF 35). Even if it were proper for the Court to consider this argument, which the governmental defendants made for the first time in their reply, it would not prevail. Waiver is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and the Court may only dismiss a claim at the 12(b)(6) stage on the basis of an affirmative defense when "the face of the complaint includes all necessary facts for the defense to prevail," *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850–51 (4th Cir. 2016). That is not the case here; the Warrens' complaint does not contain "all necessary facts" to determine whether they waived their claims. Further, to the extent the governmental defendants argue that the Court may consider the audio recordings as part of its 12(b)(6) analysis, the Court will not do so because the recordings are neither integral to nor explicitly relied on in the Warrens' complaint. The Warrens allege that they pleaded guilty, but they do not discuss their plea allocutions or rely on their guilty pleas as a basis for holding the defendants liable. *See, e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (incident report was "arguably . . . not integral to the complaint" where, although "the complaint included a few quotes from and references to the [report]," the plaintiff's "claims [did] not turn on, nor [were] they otherwise based on, statements contained in the [report]").

13

B.      Conspiracy Claim (Count II)

In Count II, the Warrens assert a claim against all defendants for "civil conspiracy to violate civil rights" in violation of § 1983. Specifically, they allege that all defendants "entered into an agreement . . . to unlawfully search, enter, and seize [the Warrens'] property and to pursue criminal charges against [the Warrens] without probable cause." ECF 1, ¶ 99.

A claim for § 1983 conspiracy requires a plaintiff to show "that the [defendants (1)] acted jointly in concert and [(2)] that some overt act was done in furtherance of the conspiracy which [(3)] resulted in [the plaintiff's] deprivation of a constitutional right[.]" *O.W. v. Carr*, 172 F.4th 337, 355 (4th Cir. 2026) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). To state a conspiracy claim, a plaintiff's factual allegations "must plausibly suggest [an] agreement" among the defendants to violate her constitutional rights, "rather than being merely consistent with agreement." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 435 (4th Cir. 2020) (emphases omitted) (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

The Warrens' allegations of a conspiracy are largely conclusory. They do not plausibly allege that the Town, the County, Hall, Absher, Bare, or Bagley conspired with each other to do anything. But they do allege that a small subset of the defendants—Schinner, Baig, and Kayser—discussed Baig and Kayser's theft allegations against the Warrens and brainstormed how to persuade the County sheriff's office to bring charges. They further allege that, at Baig's urging, Schinner contacted Hall and persuaded him to send County sheriff's deputies to assist Baig with a warrantless entry of the residence, in which Baig, Kayser, and Schinner all participated. Though these allegations are thin, they plausibly allege that Baig, Kayser, and Schinner agreed with one

14

another to facilitate a warrantless search of the residence in violation of the Warrens' Fourth Amendment rights.

The defendants offer several counterarguments. The governmental defendants rely on the same arguments they made in support of dismissing Count I. Those arguments are deficient for the reasons already discussed. Kayser argues that she cannot be held liable under Count II because she is not a state actor. But a plaintiff can prevail on a § 1983 conspiracy claim when a private actor "willfully participate[s] in joint action with a state official[,]" *Barrett*, 975 F.3d at 434 (quoting *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1422 (4th Cir. 1983)), and the Warrens have alleged that Kayser did so. Kayser also argues that the plaintiffs have violated Rule 9(g)'s requirement that "items of special damage" must be "specifically stated." *See* Fed. R. Civ. P. 9(g). But she does not develop this argument beyond a few sentences or explain the basis for her conclusion that the Warrens are claiming special damages. The Court will not dismiss Count II on such a threadbare argument. Finally, Kayser also argues that Count II is a disguised state-law claim. It is not. The Warrens claim a § 1983 conspiracy to violate their Fourth Amendment rights. That is a federal claim.

Count II may proceed against Baig, Kayser, and Schinner. Count II is dismissed without prejudice as to all other defendants.

### C.      Fourteenth Amendment Claim (Count III)

In Count III, the Warrens assert a claim they style as a Fourteenth Amendment claim for "retaliation and abuse of process." ECF 1, at 19. They argue that all defendants (except for the Town and County) collectively arranged for the search of the Warrens' residence and subsequent prosecution in retaliation for Mrs. Warren previously having reported sexual harassment by a Town police officer. *Id.* ¶¶ 105–09. Liberally construing the Warrens' complaint, their allegations suggest

three possible claims: a claim for malicious prosecution in violation of the Fourth Amendment, a claim of retaliation for the exercise of Mrs. Warren's First Amendment rights (i.e., her complaint(s) about officer misconduct), and a claim for abuse of process under Maryland state law.

To the extent the Warrens seek to bring a malicious prosecution claim, they cannot succeed. To state a claim for malicious prosecution in violation of the Fourth Amendment, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Here, the criminal proceedings did not terminate in the Warrens' favor. The Warrens pleaded guilty. So, they cannot state a malicious prosecution claim.

The Court next considers whether the Warrens have sufficiently pleaded a retaliation claim. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim for First Amendment retaliation, "a plaintiff 'must allege that (1) [the plaintiff] engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendant['s] conduct.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). To plausibly allege a causal link between his protected activity and the defendant's adverse action, a plaintiff must plead sufficient facts to indicate that "the defendant was aware of [his] engaging in protected activity" and that there was "some degree of temporal proximity"

16

between that activity and the retaliatory act. *Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024) (quoting *Constantine*, 411 F.3d at 501).

The Warrens fail to state a claim for retaliation because they fail to plausibly allege a causal link between Mrs. Warren's complaint(s) and the search and prosecution. The Warrens repeatedly refer to the search and prosecution as retaliatory, but they offer no facts to support this conclusory assertion. At best, the Warrens allege that Mrs. Warren, at some point in time, reported sexual harassment by a Town police officer, which prompted certain of the defendants to treat her with hostility. But these claims of hostility are vague and unspecific. The Warrens do not say what exactly Town police personnel did that evinced hostility and disdain. Moreover, the Warrens do not say when Mrs. Warren made her report(s). Without any allegation of temporal proximity between the report and the search and prosecution or any other allegations that would support an inference of a causal link, the Court cannot plausibly infer that the search and prosecution was undertaken in retaliation for Mrs. Warren's complaints about officer misconduct.

Finally, the Court considers whether the Warrens have alleged an abuse of process claim. "To state a cause of action for abuse of process" under Maryland law, "a party must allege facts sufficient to satisfy three elements": (1) "'that the defendant wilfully used process,' such as a subpoena or a protective order, 'after it has issued in a manner not contemplated by law'"; (2) "that the defendant acted to satisfy an ulterior motive"; and (3) "that damages resulted from the defendant's perverted use of process." *Charles v. Charles*, 336 A.3d 728, 739 (Md. App. Ct.) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)), *cert. denied sub. nom. Charles v. Summerfield*, 345 A.3d 591 (Md. 2025). Where a party pursuing criminal charges "is 'content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable [for abuse of process], notwithstanding a vicious or

vindictive motive.'" *Metro Media Ent., LLC v. Steinruck*, 912 F. Supp. 2d 344, 350 (D. Md. 2012) (quoting *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (Md. 1984)). "But the moment he attempts to attain some collateral objective, outside the scope of the process employed"—such as payment or the surrender of property—"a tort has been consummated." *Id.* (quoting *Wood*, 471 A.2d at 311).

The Warrens do not plausibly allege an abuse of process claim. They allege that all defendants, save the Town and County, subjected them to criminal prosecution in retaliation for Mrs. Warren's reports of officer misconduct. "However, the 'mere issuance of process itself . . . is not actionable, even if it is done with 'ulterior motive' or 'bad intention.'" *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 593 (D. Md. 2023) (quoting *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004)). The Warrens do not allege that any defendant used the criminal charges against them to "attain some collateral objective," such as extorting them for money. *Steinruck*, 912 F. Supp. 3d at 350 (quoting *Wood*, 471 A.2d at 311). Moreover, even if the retaliatory initiation of criminal proceedings could qualify as abuse of process under Maryland law, the Warrens—as previously discussed—do not plausibly allege that the defendants acted in retaliation for Mrs. Warren's report(s) against the officers.

Count III is dismissed without prejudice.[9]

### D.    *Monell* Claim Against the County (Count IV)

In Count IV, the Warrens claim that the County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the actions of the County sheriff's office. They contend that the search of the residence "occurred pursuant to longstanding customs, practices, and failures" within that office and that Hall "approved or condoned the illegal conduct and failed to

---

[9] Though Baig and Schinner have not been served, this claim is dismissed as to them and the rest of the defendants because Count III is deficient as to all defendants for the same reasons.

18

discipline any officer involved." ECF 1, ¶¶ 112, 114. The governmental defendants respond that the County cannot be held liable for the actions of the sheriff's office because under Maryland law, Sheriff Hall and his employees are state personnel, not County personnel. The Court agrees.

"In general, federal courts analyzing federal law claims against Maryland sheriffs follow [the Maryland Court of Appeals' decision in *Rucker v. Harford County*, 558 A.2d 399 (Md. 1989)] in holding that the sheriff acts as a state official when exercising law enforcement functions." *Ledergerber v. Blubaugh*, No. JKB-20-1208, 2020 WL 7029868, at *4 (D. Md. Nov. 30, 2020); *accord S.D. v. Abreu*, No. JMC-25-2985, 2026 WL 376741, at *6 (D. Md. Feb. 11, 2026). As such, "[o]nly in unusual circumstances, such as when a sheriff acts as a local policy maker, can a county be subject to liability for his actions under *Monell*[.]" *Ledergerber*, 2020 WL 7029868, at *4. Here, the Warrens' allegations against County sheriff's office personnel relate to their performance of law enforcement functions: searching their residence, taking reports, interrogating them, and bringing criminal charges. The Warrens do not allege any specific facts suggesting that the County sheriff's office personnel they name as defendants—Hall, Absher, and Bare—acted as local policy makers for the County in any respect. Thus, they have not plausibly alleged a *Monell* claim against the County.

Count IV is dismissed without prejudice.

### E. *Monell* Claim Against the Town (Count V)

In Count V, the Warrens claim that the Town is liable under *Monell* because it maintained "customs and practices" of "[r]etaliation against complainants who reported misconduct . . . [i]nterference in investigations outside their jurisdiction . . . [c]oordination with civilians to escalate civil issues into criminal complaints . . . and [u]se of professional influence to pressure other agencies." ECF 1, ¶ 118. They further claim that the Town "failed to train officers on

jurisdictional limits, constitutional entry standards, and conflict-of-interest issues." *Id.* ¶ 121. The governmental defendants respond that the Warrens fail to plausibly allege the existence of a custom or policy in violation of *Monell*. The Court agrees.

Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights[.]" 42 U.S.C. § 1983. Under *Monell*, a municipality can be liable under § 1983 "if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. To state a *Monell* claim, the Warrens must plausibly allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [their constitutional] rights." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (quoting *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)). This policy or practice may be established through "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 296 (D. Md. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "[O]ne or two isolated constitutional violations alone," however, "cannot constitute a policy or custom of unconstitutional conduct." *Id.* at 297.

The Warrens' complaint describes a single episode of wrongdoing by the Town police department. The Warrens do not allege any specific facts suggesting that Town police personnel have engaged in extra-jurisdictional searches, retaliated against people who report misconduct, pressured agencies, or coordinated with civilians on any other occasions. Nor do the Warrens point to any decisions by Town lawmakers that authorized the conduct of which they complain. Finally,

although the Warrens claim that Schinner, Payne, and Bagley "acted with final policymaking authority for the Town," such that their actions reflect an official policy, *see* ECF 1, ¶ 119, they do not support this conclusory assertion with any facts. *See Misjuns v. City of Lynchburg*, 139 F.4th 378, 385 (4th Cir. 2025) ("[M]erely stating the legal conclusion that [an individual] had final policymaking authority does not make it so."). In short, the Warrens have not pleaded any facts to suggest that an unconstitutional policy or custom of the Town proximately caused their alleged harm.

Count V is dismissed without prejudice.

### F.  Trespass Claim (Count VI)

In Count VI, the Warrens assert a state-law claim for trespass and invasion of privacy against all defendants. The governmental defendants argue that this claim is barred by the Warrens' failure to comply with the notice requirements of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304. Kayser asks the Court to decline supplemental jurisdiction over this claim.

"The LGTCA provides that 'an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.'" *Quigley v. United States*, 865 F. Supp. 2d 685, 691 (D. Md. 2012) (quoting Cts. & Jud. Proc. § 5-304(b)). The County and Town both qualify as local governments under the LGTCA. *See Ransom v. Leopold*, 962 A.2d 1025, 1030 (Md. Ct. Spec. App. 2008) (explaining that "[t]he LGTCA covers municipalities and counties") (quoting *Thomas v. City of Annapolis*, 688 A.2d 448, 457 (Md. Ct. Spec. App. 1997)). Similarly, the LGTCA's notice requirement applies to Town police officers because they are employees of the Town. *See, e.g., Goldring v. Town of La Plata*, No. DKC-04-1052, 2005 WL 8174723, at *1 (D. Md. Nov. 17, 2005)

21

(referring to defendant as "a police officer and employee of . . . [the] Town of La Plata"). "Notice is required to be given in writing, delivered in person or by certified mail, and must state the 'time, place, and cause of the injury.'" *Fordyce v. Prince George's Cnty.*, 43 F. Supp. 3d 537, 553 (D. Md. 2014) (quoting Cts. & Jud. Proc. § 5-304(b)–(c)). A plaintiff who files a tort action against a local government or its employees "[must] also plead . . . satisfaction [of the notice requirement] in his/her complaint." *Id.* (alteration in original) (quoting *Hansen v. City of Laurel*, 25 A.3d 122, 138 (Md. 2011)).

Here, the Warrens do not allege that they provided proper notice of their claim in compliance with the LGTCA. Nor do they address the governmental defendants' argument on this point in their opposition to the governmental defendants' motion to dismiss. Thus, the Warrens' trespass claim must be dismissed without prejudice as to the Town, the County, Schinner, Payne, and Bagley.

The LGTCA's notice requirement does not apply to Hall, Absher, and Bare because as County sheriff's office personnel, they are employees of the state, not the Town or County. *See, e.g.*, *Barnes v. Snyder*, No. PX-25-2742, 2026 WL 1336217, at \*3 (D. Md. May 14, 2026) (explaining that because the "St. Mary's County Sheriff and his Deputies are state officials when acting in their law enforcement capacities," the plaintiff was not required to follow the LGTCA's pre-suit requirements) (quoting *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004)). Instead, because Hall, Absher, and Bare are state employees, if the Warrens wish to sue them under state tort law the Warrens must comply with the pre-suit notice requirements of the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-106, 12-107. *See Barnes*, 2026 WL 1336217, at \*3. Similar to the LGTCA, the MTCA requires that a plaintiff "submit[] a written claim to the [state] Treasurer . . . within 1 year" of their injury. State Gov't § 12-106(b)(1). And

22

like the LGTCA, the MTCA's notice provision constitutes a pleading requirement. *See Singleton v. Md. Tech. Dev. Corp.*, No. JMC-22-999, 2022 WL 4104201, at *6 (D. Md. Sept. 8, 2022) ("[P]leading satisfaction of the notice provision of the MTCA is required to state a claim for money damages against the state[.]"), *aff'd*, 103 F.4th 1042 (4th Cir. 2024); *accord Bales v. Md. Judiciary/Admin. Off. of the Cts.*, No. JFM-15-3293, 2016 WL 6879902, at *12–13 (D. Md. Nov. 22, 2016).

The Warrens do not plead satisfaction of the MTCA's notice requirement in their complaint. However, a plaintiff need not plead compliance with this requirement if she "sufficiently allege[s]" that the defendants acted with "malice or gross negligence." *Andrews v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. JMC-23-172, 2024 WL 520038, at *10 (D. Md. Feb. 9, 2024) (emphasis omitted) (quoting *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007)). Under Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Myers v. Town of Elkton*, 745 F. Supp. 3d 219, 242–43 (D. Md. 2024) (quoting *Barbre*, 935 A.2d at 717), *dismissed in part & aff'd in part sub nom. Myers v. Devine*, No. 24-1879, 2026 WL 1864759 (4th Cir. June 29, 2026). Here, the Warrens' allegations against Hall, Absher, and Bare are sufficient, at this stage, to allege that they acted with gross negligence. The Court can plausibly infer that Hall, Absher, and Bare violated a manifest duty to comply with the Fourth Amendment's protection against unreasonable searches by drilling out the locks on the Warrens' door and rummaging through their property, even though the officers had no consent, there were no exigent circumstances, and there was binding caselaw stating that landlords may not consent to a search of a tenant's residence. The

23

Court will not dismiss Count VI as to Hall, Absher, and Bare for failure to plead compliance with the MTCA notice requirement.

As for Baig and Kayser, neither is a state or local government employee, so the notice requirements of the LGTCA and MTCA do not apply. Kayser argues that the Court should dismiss Count VI as to her because it should decline the exercise of supplemental jurisdiction. A court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Warrens' trespass claim is not particularly novel or complex, nor does it predominate over the claims over which the Court has original jurisdiction. Kayser identifies no exceptional circumstances that would warrant declining jurisdiction. The only subsection of § 1367 that Kayser identifies as potentially relevant is subsection (3). But the Court has not dismissed all claims over which it has original jurisdiction. Thus, the Court will not decline to exercise supplemental jurisdiction.

The Court now considers whether the Warrens have stated a trespass claim against Baig, Kayser, Hall, Absher, and Bare. To plausibly allege a trespass claim under Maryland law, a plaintiff must allege "(1) an interference with a possessory interest in his property; (2) through the defendants' physical act or force against that property; (3) which was executed without his consent." *Mitchell v. Balt. Sun Co.*, 883 A.2d 1008, 1014 (Md. Ct. Spec. App. 2005). Because "a tenant has a right of possession of demised premises to the exclusion of the landlord," a landlord commits a trespass when, during the period of a tenancy, she "enter[s] [a] leased apartment[] when

24

the tenant[] [is] absent and without notice to or permission from the tenant[.]" *Kessler v. Equity Mgmt., Inc.*, 572 A.2d 1144, 1149 (Md. Ct. Spec. App. 1990).

The Warrens have stated a trespass claim against Baig, Kayser, Hall, Absher, and Bare. The Warrens allege that during their tenancy, while they remained in possession of the residence, Baig (their landlord) and Kayser (their neighbor) persuaded police officers, including Hall, Absher, and Bare, to enter the residence without a warrant, let the officers in, and accompanied the officers while they rummaged through the Warrens' belongings. The Warrens also allege that they did not consent to this entry or search. These allegations are sufficient to plausibly allege that Baig, Kayser, Hall, Absher, and Bare undertook a physical act that interfered with the Warrens' possessory interest in both their residence and their personal property and that they did so without the Warrens' consent.

Count VI is dismissed without prejudice as to the Town, the County, Schinner, Payne, and Bagley.[10] Count VI may proceed against Baig, Kayser, Hall, Absher, and Bare.

### G.    Defamation Claim (Count VII)

In Count VII, the Warrens assert a defamation claim against Baig and Kayser. In particular, they claim that Baig and Kayser defamed them by falsely accusing them of theft. Kayser argues that this claim must be dismissed as time-barred. The Warrens do not address this argument in their opposition. The Court agrees with Kayser.

The statute of limitations for defamation claims in Maryland is one year. *See* Cts. & Jud. Proc. § 5-105. "The limitations period begins to run on the date the statements are improperly communicated." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 456 (D. Md. 2014). Under the

---

[10] Though Schinner has not been served, Count VI is also dismissed as to him because of the Warrens' failure to plead compliance with the LGTCA's notice requirements.

"discovery rule," this limitations period can be extended if the plaintiff only "knows or reasonably should know" of their injury at a later date. *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008) (quoting *Hecht v. Resolution Tr. Corp.*, 635 A.2d 394, 399 (Md. 1994)). Here, the Warrens allege that Kayser and Baig falsely accused them of stealing. The only specific false accusations referenced in the complaint were made before August 13, 2024, the date the police searched the Warrens' residence.[11] It is clear from the Warrens' complaint that they knew they had been falsely accused of stealing as of the date of the search because they allege that officers informed Mrs. Warren of the allegations against her on that day and that she tried to show them items she had been accused of stealing. Yet the Warrens did not file this case until December 2, 2025, well over a year after the search on August 13, 2024. Thus, the Warrens allege they knew or reasonably should have known about the allegedly false accusations more than a year before they filed suit. Although the Court typically does not resolve defenses on a Rule 12(b)(6) motion, it may do so when, as here, "the face of the complaint includes all necessary facts for the defense to prevail." *Leichling*, 842 F.3d at 850–51. Thus, the Warrens' defamation claim is outside the statute of limitations and must be dismissed.

Count VII is dismissed without prejudice.[12]

---

[11] At one point in their complaint, the Warrens also state that Baig and Kayser's defamatory statements "were published" to prosecutors, medical providers, and the Warrens' new landlord. ECF 1, ¶ 130. But they provide no additional details about who "published" these statements or when exactly they were made. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement."). Without more details, the Court cannot infer that Baig or Kayser defamed the Warrens at any point within the limitations period.

[12] Count VII is also dismissed as to Baig and Kayser because it is deficient against both of them for the same reason.

### H.      Claims for Injunctive Relief

In addition to monetary and declaratory relief, the Warrens also request an injunction requiring "municipalities" to "implement proper training, supervision, and constitutional safeguards." ECF 1, ¶ C (prayer for relief). The Court considers whether the Warrens have standing to seek injunctive relief. Though no party has raised this issue, the Court must consider the Warrens' standing because it implicates the Court's subject matter jurisdiction over their claims for injunctive relief, and "courts must always assure themselves of subject matter jurisdiction before reaching the merits, even if the parties have not raised it." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Article III of the Constitution extends the "judicial Power" of the federal courts only to "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). There is a case or controversy only if the plaintiff has standing to assert their claim. *TransUnion*, 594 U.S. at 423. To establish standing, a plaintiff must show "(1) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"Plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 418 (4th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 431). "[T]hose who have suffered a past harm . . . cannot seek injunctive relief against" those harms in the future "unless a recurrence is likely." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983)). In other words, "[a] plaintiff has standing to sue for injunctive relief

27

when there is 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (quoting *Lyons*, 461 U.S. at 111). "[A]n injury should be 'certainly impending' to serve as the basis for standing in a suit for injunctive relief." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The Warrens do not allege that any of their past harms—false accusations of stealing, a warrantless search of their residence, and criminal prosecution—are likely to recur, let alone "certainly impending." *Id.* (quoting *Whitmore*, 495 U.S. at 158). They simply allege no facts from which the Court could draw such an inference. Indeed, it appears from the Warrens' complaint that Baig—one of the people who allegedly made false accusations against them—is no longer their landlord. *See* ECF 1, ¶ 133 (stating that because of the defendants' "acts and omissions," the Warrens suffered damages including "[i]nterference with [their] housing stability, including issues with subsequent landlords"). Moreover, the Warrens do not allege that Baig, Kayser, or any members of the Town police department or County sheriff's office leveled additional false accusations or subjected them to additional unlawful searches during the approximately year-and-a-half between the August 13, 2024 search and the day the Warrens filed this suit. These facts further diminish the likelihood that the Warrens' alleged harms will recur. The Warrens lack standing to seek injunctive relief.

The Warrens' claims for injunctive relief are dismissed without prejudice for lack of subject matter jurisdiction.

## IV.     Conclusion

The motions to dismiss are granted in part and denied in part. The Warrens' claims for injunctive relief are dismissed without prejudice for lack of subject matter jurisdiction. Insofar as they seek declaratory and monetary relief, Count I may proceed; Count II may proceed against

Baig, Kayser, and Schinner; and Count VI may proceed against Baig, Kayser, Hall, Absher, and Bare. The Warrens' claims are otherwise dismissed without prejudice for failure to state a claim. A separate Order follows.

Date: July 9, 2026

Deborah L. Boardman
United States District Judge